Eugene C. WOEHLER, Relator,

v.

PACKAGING CORP. OF AMERICA (TENNECO), Travelers Insurance Company, Minneapolis Retail Meat Cutters & Food Handlers Health & Welfare Fund, Intervenor, Respondents.

No. C6–85–1866.

Supreme Court of Minnesota.

May 16, 1986.

William H. Getts, Minneapolis, for appellant.

James S. Pikala, Minneapolis, Kurt Walther, St. Paul, for respondents.

YETKA, Justice.

Employee seeks review of a decision of the Workers' Compensation Court of Appeals affirming the compensation judge's denial of compensation for total disability after March 16, 1983, based on his finding that employee has been permanently totally disabled from that date due solely to a lung condition, an impairment caused by severe nonwork-related chronic obstructive lung disease. Although employee contends there is no evidence to support this finding, we have determined that it has substantial support in the evidence as a whole and, consequently, affirm.

Now 56, employee worked at various warehouse tasks for the employer from 1959 until he quit his job on October 22, 1982. In the mid-1960's, employee suffered from bronchitis and increasing shortness of breath. In 1972, his problems were diagnosed as chronic obstructive lung disease. In 1976, employee stopped smoking and thought that his condition then stabilized. However, in December 1979, he saw Dr. Richard Morris, who reaffirmed the diagnosis of chronic obstructive lung disease and

prescribed various medications to help employee's breathing. In November 1981, employee was referred to Dr. Thomas Mulrooney, a pulmonary disease specialist, who agreed with Dr. Morris' diagnosis and suggested that employee take a month off to see how rest would affect his condition. Dr. Mulrooney added that it seemed unlikely to him that employee "would be able to continue fulltime employment much longer."

Employee, nevertheless, continued to work. His work required him to operate a forklift, bend to place bands about packages, lift up to 50 pounds, and fill out various forms. On May 6, 1982, while he was operating a forklift, the machine stopped abruptly and employee struck his chest against the steering wheel, bruising his chest and straining his back. Within a few days, he began to have pain in both his neck and low back. After being off work a few weeks, he was permitted to return to light work by his family doctor, Dr. Heller, and an occupational medicine specialist, Dr. James Martins. He then returned to a modified job at which he very seldom operated the forklift, but continued to do clerical work, swept the warehouse, and cleaned a bathroom weekly or more often.

Employee continued to have complaints of neck and lower back pain, and Dr. Heller referred him to Dr. Ivan Brodsky, a neurosurgeon, in July 1982. Dr. Brodsky diagnosed a cervical and lumbosacral strain syndrome and thought employee had a 17% permanent partial disability to the back. Because of employee's lung disease, Dr. Brodsky advised conservative treatment and on October 21, 1982, suggested that employee stay out of work and rest for a month.

Employee did stop working at that point, and, a month later, Dr. Brodsky found that employee's back pain had subsided to a more tolerable level. He suggested to employee that he consider early retirement because of his difficulty in breathing and his back pain. However, on March 15, 1983, Dr. Brodsky informed Dr. Heller that employee could work at light duties if he avoided excessive bending, lifting more than 15 pounds, twisting or carrying. Employee did not seek work after this time, and the employer did not communicate with him.

Employee disputed that Dr. Brodsky had released him for light work and testified that he felt better after he had been told to stay home because he could rest when he did not feel well and could restrict his activities as necessary. He testified that he always has some back pain, is careful to avoid positions that cause him discomfort in his back and neck, and has discontinued a stair-climbing program undertaken to increase his lung capacity. He continues to take medication for back pain. Asked whether he could work except for his back problem, he said that he would "probably have to say yes," but then added that he would have to try doing it.

Employee said also that he has constant pain in his chest, has to avoid going out in winter while in Minnesota because he finds it difficult to breath in the cold, and had spent the winters of 1983 and 1984 in Arizona so that he could remain more active. He takes a number of medications for his lung disease and said that it had "certainly" worsened since the May 1982 injury, that he had difficulty walking from the parking lot to the employer's plant, and that he "would notice" if he engaged in any physical activity.

Dr. Charles Cooley, an orthopedic surgeon who examined employee in October 1983, agreed with Dr. Brodsky's diagnoses, but said that employee had full range of motion in his low back and a good range of motion in his neck and that he did not appear to have a consistent area of pain. Dr. Cooley rated employee's back disability at 10% and said that, from an orthopedic standpoint, he could perform light work subject to restrictions against bending, stooping, and lifting. Dr. Brodsky, although he had considered employee able to perform light work in March 1983, expressed the opinion after examining employee in May 1984 that he would not tolerate even his previous light duty "because

of the exacerbation of his breathing as well as his back and neck."

Dr. Mulrooney opined that employee is totally disabled from working due both to the lung impairment, which he rated at 75% of the lungs and translated to a 75% permanent partial disability to the entire body, and to his back impairment. Although assigning 80% of the responsibility for employee's total disability to the lung impairment and 20% to the back injury, Dr. Mulrooney also was "somewhat astonished" that employee had worked as long as he had because of his lung condition and said that he would have expected the respiratory problems alone to have forced employee to stop working within another year or two at most. Dr. John Shronts, an internist specializing in pulmonary diseases, agreed with Dr. Mulrooney's diagnoses and permanent partial disability rating, but thought employee's lung impairment would not have prevented him from doing sedentary work. Dr. Shronts said pulmonary function tests in January 1981 and in July 1983 had not changed significantly.

Two vocational experts disagreed about whether employee could obtain or perform work on a sustained basis. Dr. Phillip Haber said that he could perform his prior job or other light work which, Dr. Haber claimed, was available. Robert Neal, a licensed consulting psychologist, thought that the "interactive effects" of the lung problem and the back pain made employee unemployable without rehabilitation, which Neal thought not feasible.

The compensation judge noted the conflicts in the vocational experts' opinions. He also noted employee's testimony that, but for his back injury, he probably could have continued to work, but did not accept it, finding instead that employee is permanently totally disabled solely because of his lung impairment.

■ It is clear that, in affirming this critical finding, the WCCA was aware of its restricted review function: that it may not disregard the compensation judge's findings, but must affirm them if they are supported by substantial evidence. Such evidence is evidence which a reasonable mind might accept as adequate. *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54 (Minn.1984). The WCCA was also aware that, although it is required to look at all of the evidence in performing its review function, it must give due weight to the compensation judge's opportunity to judge the credibility of the witnesses and must uphold findings based on conflicting evidence or evidence from which more than one inference might reasonably be drawn. *Id.*

■ Although employee insists here that reasonable minds could not conclude that he was totally disabled solely by his lung problem, we cannot agree. The evidence would have supported a finding that employee's back impairment contributes substantially to his total disability, but it offers substantial support for the finding he challenges. In spite of Dr. Mulrooney's opinion that employee's total disability is due 80% to his lung problem and 20% to the back injury and Dr. Brodsky's view that "the combination of things" made employee unable to work, employee did, in fact, work for some time after May 1982, when he was injured, and both Dr. Brodsky and Dr. Cooley felt that his back injury of itself would not prevent him from performing light work. The compensation judge found that employee has only a 15% permanent partial disability to his back, but a 75% permanent impairment to his body because of his lung disease. While Dr. Mulrooney did apportion responsibility as stated, it was because of employee's lung disease that the same doctor had been astonished that employee had continued to work until October 1982. Finally, in spite of the apparently similar pulmonary function tests in 1981 and 1983, employee's own testimony was that his respiratory problems had certainly worsened between the time he sustained the work injury and the date of the compensation hearing. He had been unable to tolerate cold weather during two winters, had difficulty breathing after walking a short distance, and "would notice" if he performed any kind of physical

activity. In light of this evidence, the WCCA properly determined that there was substantial evidentiary support for the finding that employee's permanent total disability was due solely to his lung condition.[1]

Affirmed.

WAHL and SCOTT, JJ., dissent.

WAHL, Justice, dissenting.

I respectfully dissent. On this record the finding that the employee is permanently totally disabled solely due to his non-work related lung disease is manifestly contrary to the evidence. Dr. Brodsky, an orthopedist, and Dr. Mulrooney, a specialist in lung diseases, the two medical experts who considered both employee's back injury and his lung disease in giving their opinions, concluded that employee was totally disabled by the combination of his disabilities. Dr. Mulrooney attributed 20% of the responsibility to the back injury. Even though both specialists expressed the view that employee would be able to work if he had only his back injury and back impairment, this fact does not reasonably lead to an inference that the back injury has no part in his present disability. The evidence is that employee's pulmonary function tests did not change significantly over the past several years, yet he continued to work in spite of his lung disease until he suffered the back injury. Both employee's back injury and his lung disease were substantial contributing factors in his disability. Therefore, employee is entitled to compensation because the back injury was compensable. *Schaefer v. Dunwoody Industrial Institute*, 280 N.W.2d 35 (1979).

SCOTT Justice (dissenting).

I join in the dissent of Justice Wahl.

---

1. Affirmance of this finding does not conflict with *Schaefer v. Dunwoody Industrial Institute*, 280 N.W.2d 35 (Minn.1979), relied upon by the dissenting members of the court. In *Schaefer*, the employee sought compensation for temporary total disability alleged to be the consequence both of nonwork-related cardiac disease and work-related back injuries. The WCCA, while viewing the case as close, affirmed the compensation judge's finding that the back injuries had contributed substantially to employee's temporary total disability. We held that the finding was entitled to great weight and would not be disturbed because it was not unsupported by substantial evidence in view of the entire record. There, however, the employee's back injuries were so serious that he required surgery on two occasions, with less than successful results, and one medical expert opined that employee had "real substantial pathology in his back which, I think, by itself should be considered totally disabling." 280 N.W.2d at 37. No comparable opinion was voiced in this case.